UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID ALAN HUNT,

               Petitioner,

vs.                           Case No.  2:09-cv-361-FtM-29SPC

SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS,

               Respondent.

_____

## OPINION AND ORDER

### I. Status

     David Alan Hunt (hereinafter "Petitioner" or "Hunt") initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254.  Hunt was charged in the following three cases, which were consolidated for trial:

Case Number 01-273CF:    Burglary of a dwelling and petit theft of Andrew Cole's property;

Case Number 01-274CF:    Burglary of a dwelling and grand theft of David Johnson's property;

Case Number 01-297CF     Burglary of a dwelling and grand theft of Peggy Brunk's property.

Hunt was found guilty by a jury as charged in case numbers 01-273CF and 01-274CF, and guilty of the lesser charge of burglary of a structure and grand theft in case number 01-297CF.  Petitioner was sentenced as a habitual offender to: (1) ten years in prison on the two burglary counts; (2) concurrent five years in prison on the two grand theft counts; (3) a consecutive probationary term of three

years on the offense of burglary of a dwelling; and (4) time served on the misdemeanor charge.  Petitioner's sentence and conviction were *per curiam* affirmed on direct appeal on August 22, 2003.  Hunt v. State, 856 So. 2d 993 (Fla. 2d DCA 2003).

The Petition *sub judice* identifies the following grounds for relief:

**Ground 1:** Whether the State court violated Petitioner's constitutional right on his post conviction appeal where the trial court erred and/or abused its discretion when it imposed $303.00 in court costs and $50.00 in prosecution costs in case number 01-273CF at sentencing on December 10, 2001.  Petition at 7.[1]

**Ground 2:** Whether the State court violated Petitioner's constitutional right on his post conviction appeal where the Petitioner alleged he was deprived of effective assistance of counsel, where counsel failed to present mitigation testimony and evidence in violation of the 6th and 14th Amendments of the U.S. Constitution.  Petition at 8.

**Ground 3:** Whether the State court violated Petitioner's constitutional right on his post conviction appeal where the Petitioner alleged he was deprived of a fair trial and/or effective assistance of counsel, where counsel admitted elements of guilt without the consent of the Petitioner in violation of the 5th, 6th and 14th Amendments of the U.S. Constitution.  Petition at 10.

**Ground 4:** Whether the State court violated Petitioner's constitutional right on his post conviction appeal where the Petitioner alleged he was deprived of a fair trial, the right to compulsory process for obtaining witnesses for defense, and/or effective assistance of counsel, where counsel refused and/or failed to compel co-defendant to testify.  Petition at 13.

---

[1]Except for references to the Exhibits, which are not scanned in available only in paper format, the page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

-2-

**Ground 5:** Whether the State court violated Petitioner's constitutional right where it deprived Petitioner of a fair trial and effective assistance of counsel, where counsel failed to investigate the facts and to acquaint himself with the case and layout of the victim's property.  Petition at 16.

**Ground 6:** Whether the State court violated Petitioner's constitutional right where Petitioner was deprived of a fair trial and effective assistance of counsel, where counsel failed to obtain a copy of the taped statement, where Petitioner allegedly inculpated himself during victim's interrogative taped interview by sheriff's deputies.  Petition at 19.

**Ground 7:** Whether the State court violated Petitioner's constitutional right to a fair trial, where Petitioner alleged ineffective assistance of counsel for failing to object to the court's refusal to clarify a jury question on recent possession of stolen goods presumption instruction during deliberation.  Petition at 23.

**Ground 8:** Whether the State court violated Petitioner's constitutional right to a fair trial where Petitioner alleged ineffective assistance of trial counsel, where counsel advised Petitioner against testifying and/or coerced Petitioner not to testify on his own behalf.  Petition at 25.

**Ground 9:** Whether the State court violated Petitioner's constitutional right to a fair trial where counsel presented an invalid and/or improper defense theory at trial contrary to Petitioner's 5th, 6th and 14th Amendment rights.  Petition at 28.

**Ground 10:** Whether the State court violated Petitioner's constitutional right to a fair trial where Petitioner alleged ineffective assistance of trial counsel, where the cumulative effects of all or some of counsel's errors resulted in an unfair trial and prejudice the Petitioner in violation of his 6th and 14th Amendment rights.  Petition at 30.

**Ground 11:** Whether the State court violated Petitioner's constitutional right to a fair trial and due process of law, where the State used false witness testimonies in violation of his 5th, 6th and 14th Amendment rights.  Petition at 32.

**Ground 12:** Whether the State court violated Petitioner's due process right under an illegal probation sentence. Petition at 37.

Respondent filed a Response to the Petition (Doc. #19, Response), and attached exhibits in support (Exhs. 1-20). Respondent concedes that the Petition is timely filed pursuant to 28 U.S.C. § 2244(d), but submits that the Petition should be denied due to: (1) the Court's lack of subject matter jurisdiction; (2) Petitioner's procedural defaults; and, (3) his failure to satisfy his burden under 28 U.S.C. § 2254(d), (e). Response at 1, 6. Petitioner was given admonitions and a time frame to file a Reply to the Response. See Order of Court, Doc. #8. Petitioner elected not to file a Reply. See docket. Additionally, due to Petitioner's release from incarceration,[2] Respondent submits that Ground 2 is moot, and Grounds 1 and 12 of the Petition are moot only as to the cases in which Petitioner was not assessed costs and probation (case numbers 01-274CF and -1-297CF). Respondent's Return to Order (Doc. #24) at 3. This matter is ripe for review.

## II. Applicable § 2254 Law

### A. Only Federal Questions Cognizable

A federal court only may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody

---

[2]Petitioner filed a Notice of Change of Address with the Court to advise the Court of his release. See Doc. #22. The Court directed Respondent to respond whether Petitioner's release moots the Petition (Doc. #23).

violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). "The writ of habeas corpus was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000)(citation and quotation marks omitted); Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). In particular, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992). "Federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation." Hunt v. Tucker, 93 F.3d 735, 737 (11th Cir. 1996); Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005). Consequently, "a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment - i.e., the conviction itself - and thus habeas relief is not an appropriate remedy." Alston v. Dep't of Corr., 610 F.3d 1318, 1325-26 (11th Cir. 2010)(internal quotation and citation omitted). Similarly, a claim that petitioner's federal rights have been violated because state officials failed to correctly apply state law is merely a state law claim "couched in terms" of a federal claim, and fails to state a claim upon which relief may be granted by habeas corpus. Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989).

## B.  Exhaustion and Procedural Default

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue.  28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted).  This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the

State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'") . Additionally, in articulating a factual basis in support of a claim for relief, a petitioner must have also alleged the factual predicate to the state court. <u>Kelley v. Sec'y for Dep't of Corrs.</u>, 377 F.3d 1317, 1343-44 (11th Cir. 2004)(noting that petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petition if they did not first raise them in the state courts).

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001). A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006); <u>Mize v. Hall</u>, 532 F.3d at 1190. Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to

-7-

correct a fundamental miscarriage of justice. <u>House v. Bell</u>, 547 U.S. 518, 536 (2006); <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000).

### C.   Deferential Review Required By AEDPA

Hunt filed his timely Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. <u>Abdul-Kabir v. Quarterman</u>, 127 S. Ct. 1654, 1664 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). <u>Cullen v. Pinholster</u>, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." <u>Id.</u> (internal quotations and citations omitted). <u>See</u> <u>also</u> <u>Harrington v. Richter</u>, ___ U.S. ___, 131 S. Ct. 770, 786 (2011)

(pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the

correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., ___ F.3d ___, 2012 WL 3517146 *19 (internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. 770. Id. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. Id. (citations omitted). Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. Id.

D.   **Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  Newland, 527 F.3d at 1184.  In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. ___, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S.Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal

Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d

-12-

1305, 1313 (11th Cir. 2000)(quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987)).

### III.   Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 127 S. Ct. at 1940; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

**Ground One**

Petitioner argues that the State appellate court "committed constitutional error" for affirming the assessment of court and prosecution costs in case number 01-273-CF, because Petitioner had been "adjudicated insolvent, pursuant to F.S. § 57.081," and Florida law does not permit a court to assess costs unless the defendant is solvent. Petition at 7.

Here it is clear that Hunt is neither attacking the execution or duration of his sentence, nor the fact of the conviction for which he remains in custody. 28 U.S.C. § 2241(c)(1). Instead, Petitioner is challenging only the monetary fines and assessments aspect of his Florida conviction in case number 01-273-CF.

Consequently, Petitioner cannot show entitlement to relief under §
2241. Arnaiz v. Warden, Fed. Satellite Low, 594 F.3d 1326, 1329-30
(11th Cir. 2010)(prisoner cannot use § 2241 to attack only
restitution part of sentence); Stewart v. Fed. Bureau of Prisons,
378 F. App'x 872, 873 (11th Cir. 2010)(reaffirming that the court
lacks jurisdiction to grant habeas relief unless relief affects
physical confinement which supplies the necessary custody
requirement).

Additionally, whether the State court can impose costs upon an
insolvent defendant is strictly a matter of Florida law, not
federal constitutional law. As noted supra, "[t]hat a 'state's
interpretation of its own laws or rules provides no basis for
federal habeas relief, since no question of a constitutional nature
is involved' is well established." Holssey v. Thompson, 462 F.
App'x 915, 917 (11th Cir. 2012)(quoting McCullough v. Singletary,
967 F.2d 530, 535 (11th Cir. 1992)). Consequently, because
Petitioner's first ground fails to state a claim for which habeas
relief lies, the Court dismisses Ground One.

**Ground Two**

Petitioner claims that the State appellate court "committed
constitutional error" when it per curiam affirmed the post
conviction trial court's order denying Petitioner's claim that
counsel was ineffective for failing to properly prepare Petitioner
for the mitigation phase of his trial. Petition at 8-9. Hunt
raised this claim in his Rule 3.850 motion as ground C. Exh. 16,

Vol. I at 19, 24-28.  Petitioner was afforded an evidentiary hearing on this claim.  Exh. 14 at 4.  Petitioner was represented by counsel at his July 19, 2007 evidentiary hearing.  Exh. 16, Vol. VII.  Respondent submits that Ground Two is moot.  Return at 3. More specifically, Respondent points out that Petitioner is no longer serving his sentence and does not challenge the fact of his probation in this ground.  Id.

Respondent carries the burden of establishing mootness. Mattern v. Sec'y, Fla. Dep't of Corr., 494 F.3d 1282, 1285 (11th Cir. 2007).  Respondent does not provide the Court with any State authority as to whether a State sentencing judge can alter or modify the terms of a defendant's release upon completion of a sentence.  In United States v. Johnson, 529 U.S. 53 (2000), the Supreme Court held that "[t]here can be no doubt that equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term" and noted that trial courts have discretion to modify the conditions and length of an individual's supervised release under 18 U.S.C. § 3583(e).  Id. at 60.  In federal practice, a favorable ruling in Petitioner's favor could result in him receiving a reduced or modified term of probation.  Mitchell v. Middlebooks, 287 F. App'x 772, 775 (11th Cir. 2008)(citations omitted).  Arguably, if Petitioner received a reduced sentence, he would have started, and thus ended, his probationary period sooner.  The Court finds that Respondent has not satisfied its burden of proving that this ground

is moot.   Consequently, the Court will address this ground on the merits.

Here, the post conviction court denied this claim as follows:

4.   In ground C, the Defendant argues that trial counsel was ineffective for failing to present mitigating evidence at sentencing. At the evidentiary hearing, the Defendant testified that Joseph Lombardo, Esq., the Defendant's trial counsel, failed to present testimony by the Defendant and by the Defendant's family members regarding "drug use and things of that nature" and " [a]s to person [the Defendant] was in society." (July 19, 2007 Tr. at 11-15).   According to the Defendant, he never asked Mr. Lombardo to contact family members to testify at sentencing because Mr. Lombardo "never explained mitigational reasons." (July 19, 2007 Tr. at 75).   The Defendant testified that, had Mr. Lombardo presented the above-referenced testimony, the trial court "may have given [the Defendant] a [guidelines] sentence [of] around five, seven-and-a-half -- or seven-and-a-half, five years." (July 19, 2007 Tr. at 13-14).   However, the Defendant acknowledged that his pro se motion to reduce his sentence, filed pursuant to Florida Rule of Criminal Procedure 3.800(c), based on the same reasons as alleged in this rule 3.850 proceeding, was denied on the merits. (July 19, 2007 Tr. at 76, attached rule 3.800 (c) motion, and order denying rule 3.800(c) motion).[FN]1   The Defendant's family members did not testify at the evidentiary hearing. At the evidentiary hearing, Mr. Lombardo did not recall the Defendant asking him to call mitigating witnesses. (July 19, 2007 Tr. at 123, 133). However, Mr. Lombardo stated that he presented mitigating circumstances at sentencing. (July 19, 2007 Tr. at 121-123).

[FN] 1 Attachments to the order denying the rule 3.800 (c) motion have been omitted for purposes of this order.

5.   Mr. Lombardo's testimony that he presented mitigating circumstances at sentencing is supported by the sentencing transcript. At sentencing, when the trial court asked if there was anything Mr. Lombardo wished to present before the pronouncement of sentence, Mr. Lombardo stated, "Judge, I'm going to let Mr. Hunt make his comments, and then I will make my comments as well,

if the Court will allow." (December 10, 2001 Tr. at 13). While the Defendant then made comments, none of those comments pertained to mitigation. (December 10, 2001 Tr. at 13-14). Subsequently, the trial court stated, "Is there anything anyone wants to present in mitigation of the sentence before I sentence the [D]efendant?" (December 10, 2001 Tr. at 14). Mr. Lombardo then argued for a "supervision-type sentence to allow [the Defendant] to get drug treatment." (December 10, 2001 Tr. at 14). In support, Mr. Lombardo mentioned that the Defendant underwent drug treatment in the late 1980's, that the trial court was previously made aware that the Defendant used drugs on the night of the offenses, that the Defendant has three children to support, and that the Defendant's prior felonies were not violent, serious, or extensive. (December 10, 2001 Tr. at 14-16). Before the trial court pronounced the sentences, the trial court stated, "Anything further, Mr. Hunt, that you would like to say before I pronounce sentence in your case?," and the Defendant replied, "No, sir." (December 10, 2001 Tr. at 19-20). The trial court sentenced the Defendant as a habitual felony offender (HFO) on counts one of case numbers 01-273-CP and 01-297-CF and on counts one and two of case number 01-274-CP. (December 10, 2001 Tr. at 23-25).

6.    The Court finds that the Defendant failed to meet his burden of proving that Mr. Lombardo was ineffective for failing to present mitigating evidence at sentencing. The Court finds that the Defendant failed to overcome the strong presumption that Mr. Lombardo's performance was not deficient. At sentencing, Mr. Lombardo presented mitigating circumstances. At sentencing, the Defendant did not inform the trial court that he wanted to present mitigation evidence, though the Defendant had the opportunity to do so. The Defendant admitted that he did not ask Mr. Lombardo to contact family members to testify at sentencing. The Defendant did not testify that he told Mr. Lombardo that he wanted to testify at sentencing. While the Defendant contends that testimony by the Defendant and by the Defendant's family members would have pertained to the Defendant's drug use, as discussed above, Mr. Lombardo mentioned the drug use. The Defendant's assertion that testimony by the Defendant and by the Defendant's family members would have pertained to the person the Defendant was in society is vague. The Defendant's pro se rule 3.800(c) motion, which, according to the Defendant, contained the

-17-

> mitigation evidence that Mr. Lombardo failed to present at sentencing, was denied. Consequently, the Court also finds that the Defendant failed to establish that there is a reasonable probability that, at sentencing, the trial court would have imposed lesser sentences had that mitigation evidence been presented. <u>Sigler v. State</u>, 702 So. 2d 292 (Fla. 3d DCA 1997)(even in light of mitigating factors, imposition of HFO sentence was not an abuse of discretion). For these reasons, ground C is denied.

Exh. 15 at 3-4. The State appellate court *per curiam* affirmed the post conviction court's denial of this clam on appeal. <u>Hunt v. State</u>, 9 So.3d 625 (Fla. 2d DCA 2009).

Here, the State post conviction court correctly adopted the performance and prejudice prongs required by the <u>Strickland</u> standard as the governing standard in analyzing Petitioner's ineffective assistance of counsel claim. Exh. 15 at 1 (citing to <u>State v. Freeman</u>, 796 So.2d 574 (Fla. 2d DCA 2001), in which the Florida appellate court adopts the <u>Strickland</u> analysis for analyzing claims of ineffectiveness by trial counsel). The post conviction court initially disposed of the claim on the deficiency prong, noting that the State court rejected Petitioner's Rule 3.800 motion in which Petitioner asserted the additional mitigation evidence in support of his argument for a reduction in his sentence. Consequently, even assuming *arguendo* that counsel's performance was deficient, Petitioner can not show prejudice from counsel's alleged failure to present mitigation evidence because, based upon the record, there is no reasonable likelihood that additional mitigation evidence would have made a difference in

Petitioner's sentence.  See Burger v. Kemp, 483 U.S. 776, 788-95 (1987)(holding that when the available mitigation evidence would not have aided the petitioner's case, the attorney did not render ineffective assistance by failing to present the evidence); Grayson v. Thompson, 257 F.3d 1194, 1225 (11th Cir. 2001)(noting that "[e]ven assuming *arguendo* ineffective assistance in the mitigating case at sentencing, there is no reasonable probability that the balance of aggravating and mitigating circumstances that led to the imposition of the death penalty in this case would have been different had counsel introduced the evidence compiled and presented in [petitioner's] state habeas proceedings.").

Additionally, the post conviction court found that the record refuted Petitioner's claim that counsel was deficient because trial counsel did present mitigation evidence on Petitioner's behalf. Alternatively, based upon the record, the Court finds that Petitioner has failed to meet his burden under § 2254(d) and (e) and will deny Ground Two on the merits.

**Ground Three**

Petitioner assigns error to trial counsel for conceding Petitioner's guilt during trial without first obtaining Petitioner's consent.  Petition at 10-11.  More specifically, Petitioner claims that trial counsel told the jury that Petitioner was guilty of trespassing and he did not consent to counsel making this admission.  Id. at 10.

Hunt raised this claim in his Rule 3.850 motion as ground D. Exh. 16, Vol. I at 19, 28-32.   Petitioner was afforded an evidentiary hearing on this claim.   Exh. 14 at 4.

In denying ground D, the post conviction court, held, in pertinent part, as follows:

7.   In ground D, the Defendant argues that trial counsel was ineffective for admitting elements of guilt without the Defendant's consent.   In case number 01-273-CF, the Defendant was charged with and convicted of burglary of a dwelling and petit theft. (Attached information and verdict).   In case number 01-274-CF, the Defendant was charged with and convicted of burglary of a dwelling and grand theft. (Attached information and verdict).   In case number 01-297-CF, the Defendant was charged with burglary of a dwelling and grand theft, but was convicted of burglary of a structure and petit theft. (Attached information and verdict).   During opening and closing arguments, Mr. Lombardo argued that the co-defendant committed the burglaries and theft, that the Defendant did not participate in the crimes, though the Defendant was in the vehicle used in the crimes, and that the Defendant was guilty of trespassing. (Attached November 7, 2001, vol. I, Tr. at 15-19 and attached November 8, 2001 Tr. at 53-59, 78-82).   At the evidentiary hearing, the Defendant testified that, without discussion and/or his consent, Mr. Lombardo admitted that the Defendant was guilty of trespassing. (July 19, 2007 Tr. at 15-19, 58, 59, 89).   However, the Defendant acknowledged that, in the Defendant's April 12, 2001 statement, the Defendant told Detective Shawn Ramsey that the Defendant was on each of the properties where items were stolen, that the Defendant entered one of the victim's garages, that the Co-Defendant burglarized the homes while the Defendant was present, that the Defendant was in the vehicle used in the crimes, that the stolen property was placed in the same vehicle, and that the Defendant drove away the same vehicle. (July 19, 2007 Tr. at 77-79).

8.   At the evidentiary hearing, Mr. Lombardo testified that the Defendant's statement, which was played to the jury, placed the Defendant at the scene. (July 19, 2007 Tr. at 135).   According to Mr. Lombardo, while he admitted that the Defendant was in the vehicle, he argued

-20-

that the Defendant did not commit the burglaries. (July 19, 2007 Tr. at 123-124).   Mr. Lombardo explained his reason for doing so as follows:

> Well, I felt based on the statement that [the Defendant] had made that were [sic] let in and the jury heard, his own admissions, the evidence in the case, that he was found in the truck, *et. cetera*, that that was the best strategy to go with, to admit that he was there.  I don't think that we were going to be able to deny that fact.  So I wanted to give the jury something to hang their hat on and say, well, if you want to find him guilty of something, he's guilty of trespassing.

(July 19, 2007 Tr. at 124).   Similarly, Mr. Lombardo testified as follows:

> There were admissions to trespassing on these people's property, which is a misdemeanor, which I'm sure Mr. Hunt would have gladly been - - glad to have been convicted of considering that the maximum penalty would have been a year in the county jail.  So that was my strategy and my theory in the case, which I thought was the most effective way to go.

(July 19, 2007 Tr. at 125).   Mr. Lombardo subsequently stated, "Did I have [the Defendant] write down on a piece of paper that he agreed to it? No, I didn't, but I told him and I believe we discussed that this would be the best strategy."  (July 19, 2007 Tr. at 137-138).

9.   The Court finds that the Defendant failed to meet his burden of proving that Mr. Lombardo was ineffective for failing to admit elements of guilt without the Defendant's consent.  The Court finds that the Defendant failed to overcome the strong presumption that Mr. Lombardo's performance was not deficient. Mr. Lombardo's testimony demonstrates that, given the evidence, he conceded that the Defendant was guilty of trespassing, which was not one of the charged offenses, as part of a reasonable trial strategy, and that he discussed the strategy with the Defendant.  See Harris v. State, 768 So. 2d 1179 (Fla. 4th DCA 2000)(attorney's concessions on lesser included offenses constituted a reasonable tactical decision made in consideration of inculpatory

evidence).   The Court, having reviewed the trial
transcript, finds that the Defendant also failed to prove
prejudice.  See Harvey v. State, 946 So. 2d 937 (Fla.
2006)(defense counsel's opening statement during guilt
phase of murder trial, effectively conceding defendant's
guilt of murder did not amount to ineffective assistance,
where defendant's confession was admitted into evidence
and where counsel said nothing more to jury than what
defendant said during confession); Harris (defense
counsel was not ineffective for concessions on lesser
included offenses where it is not reasonably likely that
result of defendant's trial would have been any
different). For these reasons, ground D is denied.

Exh. 15 at 5-7.  On appeal, the appellate court *per curiam*

affirmed.  Hunt v. State, 9 So. 3d 625 (Fla. 2d DCA 2009); Exh. 19.

The proper standard to be applied in assessing whether counsel

is ineffective for conceding a defendant's guilt is the two-prong

standard set forth in Strickland.  Florida v. Nixon, 543 U.S. 175,

187 (2004).  Petitioner bears the burden of proving that trial

counsel's decision to concede that Hunt was guilty of the lesser

included offense of trespass was objectively unreasonable; and,

that but for counsel's concession, there is a reasonable

possibility that the outcome of Hunt's trial could have been

different.  Strickland, 466 U.S. at 687-88.

Based upon the record, trial counsel's statements to the jury

that Hunt was guilty of trespassing were tactical and strategic.

The State had overwhelming evidence of Hunt's guilt, including

Hunt's own admission to Detective Ramsey that he was with Mr.

Canada, the co-defendant, when the three homes were burglarized.

Exh. 16, VII at 1259, 1270.  Counsel stated that he wanted to

provide the jury with an alternative theory in light of Hunt's incriminating statements.  Id.  The decision to admit to certain uncontested facts was a tactical decision and is entitled to deferential review under Strickland, 466 U.S. at 689.  "Counsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade' [by failing to concede overwhelming guilt]."  Nixon, 543 U.S. at 192 (quoting United States v. Cronic, 466 U.S. 648, 656 n. 19).  Further, trial counsel did not concede Petitioner's guilt to the offenses with  which Petitioner was charged, but instead argued to the jury that the State could only prove trespassing "at best."  Thus, trial counsel did not enter a guilty plea on Petitioner's behalf without his consent.  McNeal v. Wainwright, 722 F.2d 674, 677 (11th Cir. 1984)(distinguishing that a tactical decision to admit to a lesser offense does not amount to guilty plea without a defendant's consent).

The Court finds that the State courts' factual determinations were not unreasonable determinations based on the evidence presented.  Additionally, the State courts' decisions were not contrary to or an unreasonable application of clearly established federal law.  As noted above, counsel's actions are deemed reasonable.  Here, the presumption that trial counsel's performance was reasonable under the circumstances is even stronger because the record reflects that counsel was an experienced criminal defense

attorney.[3]   Consequently, the Court will deny Ground Three as without merit.

**Ground Four**

Petitioner claims that the State appellate court "committed constitutional error" when it *per curiam* affirmed "without addressing the merits" of Petitioner's claim that counsel was ineffective for failing "to have [Petitioner's] co-defendant testify at trial. Petition at 13. In particular, Petitioner submits that his co-defendant, Mr. Canada, "accepted full responsibility for all the crimes committed" when questioned by the Charlotte County Sheriff's Office. Petition at 14.

Hunt raised this claim in his Rule 3.850 motion as ground E. Exh. 16, Vol. I at 19, 32-39. Petitioner was afforded an evidentiary hearing on this claim. Exh. 14 at 4. The post conviction court denied ground E, and the appellate court *per curiam* affirmed. Hunt v. State, 9 So. 3d 625 (Fla. 2d DCA 2009); Exh. 19. In denying relief, the post conviction court held as follows:

---

[3] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001). At the July 19, 2007 evidentiary hearing, Mr. Lombardo testified that he had been a defense attorney for 17 years and had tried over 100 criminal trial. E.H. at 119-120. See Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).

10.   In ground E, the Defendant argues that trial counsel was ineffective for not calling the Co-Defendant to testify at trial.  At the evidentiary hearing, the Defendant testified that the Co-Defendant made statements to the police, and that, during a deposition, the Co-Defendant accepted "full responsibility." (July 19, 2007 Tr. at 19-21, 23).  According to the Defendant, he informed Mr. Lombardo that he wanted the Co-Defendant to testify at trial, but Mr. Lombardo gave no reason for not calling the Co-Defendant to the stand. (July 19, 2007 Tr. at 21-24).  However, Mr. Lombardo testified that he did not call the Co-Defendant to testify because the Co-Defendant would have implicated the Defendant in the crimes, "wouldn't have helped" the Defendant, and "would have only hurt" the Defendant. (July 19, 2007 Tr. at 125-126).  Mr. Lombardo indicated that he informed the Defendant that the Co-Defendant's testimony would be damaging and that it was "foolish" to call the Co-Defendant to the stand. (July 19, 2007 Tr. at 136).

11.   The Court finds that the Defendant failed to meet his burden of proving that Mr. Lombardo was ineffective for failing to call the Co-Defendant to testify at trial. The Court finds that the Defendant failed to overcome the strong presumption that Mr. Lombardo's performance was not deficient.  Mr. Lombardo's testimony demonstrates that, as part of a reasonable trial strategy, he chose not to call the Co-Defendant to stand because the Co-Defendant's testimony would have been damaging to the Defendant.  See White v. State, 32 Fla. L. Weekly S494 (Fla. July 12, 2007)(attorney's failure to present testimony of co-defendant was reasonable tactical decision and was not ineffective assistance); Marquard v. State, 850 So. 2d 417 (Fla. 2002)(defense counsel's decision not to call certain witnesses who could have asserted that co-defendant inflicted fatal wound, because witnesses did not exonerate defendant, but in fact confirmed that defendant was a participant in crime, was reasonable trial strategy, and therefore was not ineffective assistance).  The Court, having reviewed the trial transcript, finds that the Defendant additionally failed to prove prejudice.  For these reasons, ground E is denied.

Exh. 15 at 7-9.

Whether to call a particular witness "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004)(internal quotations and citations omitted); see also Hall v. Thomas, 611 F.3d 1259, 1293 (11th Cir. 2010).  During the evidentiary hearing, trial counsel testified that he investigated the issue as to whether to call co-defendant Canada as a witness, including speaking with defense counsel for the co-defendant. E.H. at 1259-60.  Mr. Canada was attempting to negotiate a plea with the State; and, indeed, eventually entered into a plea deal.  Id. at 1259.  Trial counsel testified unequivocally that in his opinion co-defendant Canada "would have implicated Mr. Hunt in these crimes."  Id.  Notably, Petitioner did not call Mr. Canada as a witness at the evidentiary hearing and/or introduce an affidavit from Mr. Canada to confirm that Mr. Canada was willing to exonerate Petitioner from all involvement in the various crimes at the time of Petitioner's trial.

In summary, the Court finds that the State court's conclusion-that trial counsel was not ineffective - is not an unreasonable determination of the facts in light of the evidence presented, nor is it contrary to, or an unreasonable application of, clearly established federal law.  Thus, the Court will deny Petitioner relief on Ground Four.

**Ground Five**

Petitioner submits that the State appellate court "committed constitutional error" by silently affirming the post conviction court's denial of Petitioner's claim that counsel was ineffective for failing to personally visit and investigate the crime scenes. Petition at 16-17.  Hunt raised this claim in his Rule 3.850 motion as ground F.  Exh. 16, Vol. I at 19, 39-41.  Petitioner was afforded an evidentiary hearing on this claim.  Exh. 14 at 4.  In rejecting this ground after the evidentiary hearing, the post conviction court concluded as follows:

> 12.   In ground F, the Defendant argues that trial counsel was ineffective for failing to "investigate the facts and to acquaint himself with the case and layout of the victim's property."   At the evidentiary hearing, the Defendant testified that, before trial, Andrew Cole, the victim in one of the cases, said he saw the Defendant run from the carport. (July 19, 2007 Tr. at 25-26).  The Defendant testified that, during Mr. Cole's statement to the police, Mr. Cole said [he] could not see because of the glare on the windshield. (July 19, 2007 Tr. at 27). According to the Defendant, he believed that Mr. Cole's statements, during Mr. Cole's deposition and at trial, that Mr. Cole did not see the Defendant well enough to identify him, but that Mr. Cole's son saw the Defendant, was false. (July 19, 2007 Tr. at 80).

> 13.   The Defendant stated, "Well, [Mr. Lombardo] needed to investigate a little bit. The pictures would have shown [a] driveway obscured by trees and foliage, [and the] sequence of events and time parameters would have shown [that] it was impossible for [Mr. Cole] to see me." (July 19, 2007 Tr. at 26-27).   Regarding what Mr. Lombardo would have learned had Mr. Lombardo viewed the property, the Defendant testified as follows:

>> That there were trees and foliage and that it was obscured, that he couldn't see.  It was not a very long driveway there.  And I never

> got out of the vehicle at this property, you
> know.   That's where I learned what he was
> actually - what was actually going on was
> right there and I left in his vehicle I slid
> over from the passenger's side over to the
> driver's side and I took off.

(July 19, 2007 Tr. at 28).   The Defendant stated that he
wanted Mr. Lombardo to investigate for purposes of
impeaching Mr. Cole and to show the jury that there "may
have been" mistakes in Mr. Cole's testimony. (July 19,
2007 Tr. at 29).   According to the Defendant, he asked
Mr. Lombardo to view the property, but he did not recall
Mr. Lombardo's response, did not recall Mr. Lombardo
discussing the property layout, and did not recall how
Mr. Lombardo was planning to attack Mr. Cole's
credibility. (July 19, 2007 Tr. at 27-30).

14.   At the evidentiary hearing, Mr. Lombardo testified
that he did not view Mr. Cole's property. (July 19, 2007
Tr. at 126, 139).   Mr. Lombardo stated, "I knew what the
scenes were based on talking to the witnesses, civilian
and police, and reading the discovery.   It was not
necessary that I go to the scenes.   That wasn't really
part of our defense." (July 19, 2007 Tr. at 126).   Mr.
Lombardo reiterated that he "had the discovery and the
layout of the area" and that he was familiar with the
area. (July 19, 2007 Tr. at 139). According to Mr.
Lombardo, he had other evidence to determine information
regarding each burglary location in order to prepare a
defense. (July 19, 2007 Tr. at 127).

15.   The Court finds that the Defendant failed to meet
his burden of proving that Mr. Lombardo was ineffective
for failing to investigate and to acquaint himself with
the case and layout of Mr. Cole's property.   The Court
finds that the Defendant failed to overcome the strong
presumption that Mr. Lombardo's performance was not
deficient.   The Court notes that the Defendant did not
present pictures or diagrams of Mr. Cole's property at
the evidentiary hearing.   Mr. Lombardo's testimony
demonstrates that, as part of a reasonable trial tactic,
he chose not to view Mr. Cole property. Reasoned trial
tactics do not amount to ineffective assistance of
counsel. <u>Gorby v. State</u>, 819 So. 2d 664 (Fla. 2002).
The Court, having reviewed the trial transcript, finds
that the Defendant also failed to prove prejudice.   For
these reasons, ground F is denied.

Exh. 15 at 9-11.  The appellate court *per curiam* affirmed.  <u>Hunt v. State</u>, 9 So. 3d 625 (Fla. 2d DCA 2009); Exh. 19.

An "attorney is not necessarily required to investigate every evidentiary lead; and an attorney's decision to limit his or her investigation may be reasonable under the circumstances." <u>Harris v. Dugger</u>, 874 F.2d 756, 763 (11th Cir. 1989)(citations omitted). "However, such decisions must flow from an informed judgement." <u>Id.</u>

Here, trial counsel testified that he "didn't feel it was necessary to go visit the scenes[,]" because he "knew what the scenes were based on talking to the witnesses, civilian and police, and reading discovery."  E.H. at 1261.  Thus, trial counsel made a reasoned decision not to personally visit each of the scenes. Petitioner does not make a showing that trial counsel's decision was not "the result of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690.  Counsel only has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Id.</u> at 691. Further, in reviewing counsel's decisions, the Court is to apply "a heavy measure of deference to counsel's judgment." <u>Id.</u>

Petitioner does not demonstrate that trial counsel's decision not to personally investigate the crime scene fell below <u>Strickland's</u> objective standard of reasonableness. Based upon a review of the record and applicable law, the Court finds that

Petitioner does not overcome his burden.  28 U.S.C. § 2254 (d) and (e).  Consequently, the Court denied Ground Five as without merit.

**Grounds Six and Eleven**

In his sixth ground for relief, Petitioner contends that the State appellate court "committed constitutional error" in affirming and failing to address the merits of Petitioner's claim that counsel was ineffective for failing to obtain a copy of victim Cole's tape-recorded statement to law enforcement.  Petition at 19-20.  Petitioner argues that counsel's failure to obtain the tape-recorded statement prevented the defense from being able to "contradict" the testimony of victim Cole and  Officer Ramsey.  Id. at 20.  Petitioner also argues that the post conviction court erred because the post conviction court did not "view" this ground as a separate ground, but combined and/or "confused" this ground with Petitioner's Brady[4] and Giglio[5] claims.  Id. at 20-22.

In his eleventh ground for relief, Petitioner claims that the post conviction court erred in denying Petitioner's claim that the

---

[4]Brady v. Maryland, 373 U.S. 83 (1963).  To obtain relief on a Brady claim, a defendant is required to establish that (1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not reasonably obtain it; (3) the government suppressed the evidence; and (4) the evidence was material.  Id.

[5]Giglio v. United States, 405 U.S. 150 (1972). To obtain relief on a Giglio claim, a defendant is required to prove (1) the prosecutor knowingly used perjured or false testimony; and, (2) the testimony was material, i.e. the testimony could have reasonably affected the judgment.  Id.

state used false testimony.  Petition at 32.  Petitioner avers that the state was in possession of the evidence and knew it to be exculpatory.  Id. at 34.  Thus, Petitioner claims that the state committed a Brady violation by failing to turn over the tape-recorded statement.  Id.  Further, Petitioner claims that the state committed a Giglio violation because it introduced testimony during trial that was contradicted by the tape-recording.  Id.

Petitioner raised his ineffective assistance claim concerning the tape recorded statement of victim Cole as ground G in his Rule 3.850 motion.  Exh. 16, Vol. I at 19, 35-41.  Therein, Petitioner claimed he appraised trial counsel that the inculpatory statement that victim Cole attributed to Petitioner is not the statement Petitioner made to Cole.  Id. at 41-42.[6]  Petitioner requested trial counsel to obtain a copy of victim Cole's tape-recorded statement made to Detective Dunning to prove that he did not make the inculpatory statement that Cole claimed.  Id.

Although Petitioner raised a claim that the state used false testimony as a separate ground in his Rule 3.850 motion, ground L, the post conviction court addressed ground L in conjunction with ruling on Ground G.  Indeed, Petitioner referenced the State's alleged use of this false testimony in his argument in support of

---

[6]During Cole's deposition, Cole  testified that Petitioner spoke with him at the police station and said "I broke into your house and did whatever I did because of drugs."  Id. at 42. Petitioner claims that he saw Cole outside of the interrogation room and stated "I'm sorry for what happened to you sir."  Id.

Ground G in his Rule 3.850 motion.  Id. at 44 (stating "[T]he state possessed the tape.  The state knew or should've known the testimony that was put forth by Cole and advanced by the State was false.").  Additionally, the Petitioner cited to the three-prong test set forth in Giglio as support that the state used "perjured testimony."  Id.  Because the post conviction court addressed the claims together, and because the Court finds that the claims are related and understood together in context, the Court will also address both Grounds Six and Eleven together.

The post conviction trial court denied relief after affording Petitioner an evidentiary hearing on both grounds.  Exh. 14 at 5-6.  In rejecting both grounds, the court held:

> 16.  In grounds G and L, the Defendant essentially argues that trial counsel rendered ineffective assistance regarding Andrew Cole's taped statement, that the State "used false witness testimonies," and that there was a Brady violation.  At trial, Mr. Cole testified that, at the police station, the Defendant said "I'm sorry for breaking into your home." (November 7, 2001 Tr. at 97).  At trial, Detective Sean Ramsey testified that, at the police station, the Defendant attempted to apologize to Mr. Cole for the problems that the Defendant had caused. (November 7, 2001 Tr. at 168, 176).  At the evidentiary hearing, the Defendant testified that the prosecutor knew or should have known that the above-referenced testimony by Mr. Cole and Detective Ramsey was false. (July 19, 2007 Tr. at 60-63).  The Defendant stated that Mr. Lombardo should have objected to the testimony. (July 19, 2007 Tr. at 61-62).  The Defendant testified that, during his taped statement to the police, he admitted that, at Mr. Cole's property, he was in the passenger seat of the vehicle and slid over to the driver's side after he realized what was happening and drove away. (July 19, 2007 Tr. at 31).  The Defendant stated that, after his statement to the police, he was taken out of the interrogation room for processing and he told Mr. Cole,

who was also giving a taped statement to another detective (Detective Dudding), that he was sorry for what happened to Mr. Cole. (July 19, 2007 Tr. at 3 1-32, 83). However, the Defendant admitted that he did not know Mr. Cole before the burglary. (July 19, 2007 Tr. at 83).

17. According to the Defendant, after he read discovery, he learned that Mr. Cole and Detective Ramsey gave untruthful statements. (July 19, 2007 Tr. at 9-11, 32). The Defendant testified that, before trial, he asked Mr. Lombardo to obtain Mr. Cole's taped statement, but Mr. Lombardo "never really responded to it" and "shrugged it off." (July 19, 2007 Tr. at 9-11, 33-35, 88). According to the Defendant, Mr. Cole's taped statement would have shown that he did not confess to Mr. Cole and that the testimony by Mr. Cole and Detective Ramsey was false. (July 19, 2007 Tr. at 33, 61-63). The Defendant stated that he never received a transcript of Mr. Cole's taped statement. (July 19, 2007 Tr. at 36-37). The Defendant stated, "Well, I believe [the State] did listen to the tape and they did understand that he already testified and did something with the tape." (July 19, 2007 Tr. at 63). By order rendered February 13, 2006, this Court found that the Defendant failed to prove that either the Charlotte County Sheriff's Office or the State Attorney's Office is in possession of Mr. Cole's taped statement. (Attached order).

18. At the evidentiary hearing, Sergeant John Hamp testified that he delivered four bags of evidence to the State Attorney's Office in November 2001. (July 19, 2007 Tr. at 91-94). According to Sergeant Hamp, item four on the property receipt for the evidence said "taped statements of William Canada, David Hunt[,] and Andrew Cole." (July 19, 2007 Tr. at 92). Sergeant Hamp stated that he did not open the bags and he did not recall looking into the bags to ascertain whether or not they contained cassettes. (July 19, 2007 Tr. at 92). Sergeant Hamp acknowledged that the tape containing Mr. Cole's statement cannot be located and he denied involvement with that matter. (July 19, 2007 Tr. at 95, 98).

19. At the evidentiary hearing, Michael G. Powell, Esq., the attorney who prosecuted the Defendant's cases, testified that he had and still has no reason or proof that the trial testimony regarding the Defendant's statement to Mr. Cole was false. (July 19, 2007 Tr. at 109-110, 114-117). According to Mr. Powell, he has no

recollection of taking possession of Mr. Cole's taped
statement and no memory of listening to that tape. (July
19, 2007 Tr. at 113, 115-116).  Mr. Powell did not think
that he would have had any reason to listen to the tape
because Mr. Cole was a cooperative witness. (July 19,
2007 Tr. at 115-116).  Mr. Powell testified that he has
been unable to locate Mr. Cole's taped statement and he
did not believe that Mr. Lombardo had asked for that tape
during discovery. (July 19, 2007 Tr. at 105, 108).
Additionally, Mr. Powell stated that his practice was not
to automatically send copies of tapes to defense counsel,
unless defense counsel specifically requested the tapes.
(July 19, 2007 Tr. at 108-109).  Mr. Powell confirmed
that there was other evidence against the Defendant other
than the Defendant's apology to Mr. Cole and that the
trial testimony regarding the Defendant's statement to
Mr. Cole was not material evidence.  (July 19, 2007 Tr.
at 115, 116).

20.  At the evidentiary hearing, Mr. Lombardo initially
had no recollection of the Defendant informing him,
during pre-trial preparation, that the Defendant told Mr.
Cole that the Defendant was sorry for what happened to
Mr. Cole, not that the Defendant was sorry for breaking
into Mr. Cole's home. (July 19, 2007 Tr. at 131-132).
However, subsequently, Mr. Lombardo stated, "I'm sure
that we probably did, but I didn't feel that it was - -
I didn't feel that it was an issue worth digging into."
(July 19, 2007 Tr. at 131-132).  Mr. Lombardo testified
that he found no evidence to support the Defendant's
version of what the Defendant said to Mr. Cole. (July 19,
2007 Tr. at 127).  According to Mr. Lombardo, well after
the Defendant's sentencing, the Defendant wrote him a
letter regarding an alleged discrepancy between Mr.
Cole's taped statement and between Mr. Cole's deposition
and trial testimony. (July 19, 2007 Tr. at 141).  Mr.
Lombardo testified that he engaged in and received
discovery, but he did not make a specific request for
copies of the taped statements of the Defendant, the
Co-Defendant, and Mr. Cole. (July 19, 2007, Tr. at 140).
According to Mr. Lombardo, he had copies of the
transcripts of those three taped statements and he
believed he had provided them to the Defendant. (July 19,
2007 Tr. at 140-141).  Nevertheless, Mr. Lombardo stated,
"I think there was plenty of other evidence that
implicated Mr. Hunt, so I don't know if the tape[d]
[statement of Mr. Cole] would have been [sic] any
different." (July 19, 2007 Tr. at 142).

21.  The Court finds that the Defendant failed to meet his burden of proving that Mr. Lombardo was ineffective concerning Mr. Cole's taped statement.  The Court finds that the Defendant failed to overcome the strong presumption that Mr. Lombardo's performance was not deficient.  Other than the Defendant's testimony, the Defendant presented no evidence that the Defendant actually told Mr. Cole that he was sorry for what happened to him, not that he was sorry for breaking into his home.  Both Mr. Lombardo and Mr. Powell testified that there was no evidence to support the Defendant's version of what the Defendant told Mr. Cole.  Mr. Lombardo indicated that he gave the Defendant the transcript of Mr. Cole's taped statement and that he did not believe that the issue was "worth digging into." Additionally, the Court, having reviewed the trial transcript, finds that the Defendant failed to prove prejudice (i.e., that, but for Mr. Lombardo's alleged errors, the outcome of the trial would have been different).

22.  The Defendant's contention that the State presented false testimony at trial is procedurally barred as it should have been raised on direct appeal.  Rose v. State, 675 So. 2d 567, 569, n.l (Fla. 1996).  Additionally, the Court finds that, based on Mr. Powell's testimony, the Defendant failed to prove that Mr. Powell presented or failed to correct false trial testimony by Mr. Cole and Detective Ramsey or that Mr. Powell knew that the trial testimony by Mr. Cole and Detective Ramsey was false.  See Green v. State, 32 Fla. L. Weekly 619 (Fla. Oct. 11, 2007)(to prove claim that prosecutor used false testimony, defendant must show that prosecutor presented or failed to correct false testimony, that prosecutor knew the testimony was false, and that the false evidence was material; the false evidence is deemed material if there is any reasonable possibility that it could have affected the verdict).

23.  The Defendant's contention that there was a Brady violation is likewise procedurally barred because it should have been raised on direct appeal. 675 So. 2d at 569, n. 1.  Additionally, the Court finds that the Defendant failed to meet his burden of proving a violation of Brady.  To prove such a violation, a defendant must establish that the State possessed evidence that was favorable to the defendant, the evidence was not given to the defendant, the defendant

did not have the evidence and could not have obtained the evidence with reasonable diligence, and had the evidence been disclosed, a reasonable probability exists that the outcome of the trial would have been different. <u>Lewis v. State</u>, 714 So. 2d 1201 (Fla. 2d DCA 1998). Mr. Powell did not recall possessing Mr. Cole's taped statement. Mr. Powell testified that his practice was not to turn over tapes to defense counsel, unless specifically requested by defense counsel. Both Mr. Powell and Mr. Lombardo confirmed that Mr. Lombardo did not specifically request the tape at issue. While the Defendant may not have possessed the tape of Mr. Cole's statement, Mr. Lombardo indicated that he provided the Defendant with a transcript of that taped statement. Based on the trial transcript and the testimony by Mr. Powell and Mr. Lombardo, the Defendant failed to prove that there is a reasonable probability that the taped statement of Mr. Cole would have changed the outcome of the trial. The Defendant was in the best position to provide information regarding what he actually said to Mr. Cole at the police station. <u>See</u> <u>Carroll v. State</u>, 815 So. 2d 601 (Fla. 2002)(State did not improperly withhold <u>Brady</u> material where defendant knew much of information in withheld materials).

Exh. 15 at 11-16. On appeal, the appellate court *per curiam* affirmed. <u>Hunt v. State</u>, 9 So. 3d 625 (Fla. 2d DCA 2009); Exh. 19.

At the outset, the Court does not find that the post conviction court "confused" grounds G and L of Petitioner's Rule 3.850 motion. Rather, the post conviction court addressed each of Petitioner's arguments raised in the Rule 3.850 motion in support of Ground G. Further, to the extent that grounds G and L were related, the post conviction court chose to address the grounds together. The post conviction court properly applied the two prong <u>Strickland</u> analysis in disposing of Petitioner's claim that counsel was ineffective for failing to obtain the tape recorded statement of victim Cole.

Here, contrary to Petitioner's assertion, trial counsel testified that Petitioner did not raise an issue concerning the tape-recording until <u>after</u> he "had been tried and convicted and sentenced." E.H. at 1263. Because counsel had the transcripts of the tape-recorded statements, counsel "did not ask for the specific tapes." <u>Id.</u> at 1275. Counsel reaffirmed that he did not recall the "discrepancy" issue being raised by Petitioner, until "after the sentencing or even a couple of years after the sentencing." <u>Id.</u> at 1276. Petitioner did not produce any evidence at the evidentiary hearing that his statement to victim Cole was different than what Cole and Detective Ramsey had testified to at trial. Where a record is silent or incomplete, the Court assumes that counsel acted reasonably. <u>Id.</u> (citing <u>Williams v. Head</u>, 185 F.3d 1223, 1228 (11th Cir. 1999)(stating "where a record is incomplete or unclear about [trial counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."). Similarly, "when the evidence is unclear or counsel cannot recall specifics about his actions due to the passage of time and faded memory, we presume counsel performed reasonably and exercised reasonable professional judgment." <u>Blakenship v. Hall</u>, 542 F.3d 1253, 1274 (2008)(citations omitted). The Court denies Ground Six as without merit, because Petitioner has failed to demonstrate that the State court's adjudication of the claim was contrary to clearly established federal law, involved

an unreasonable application of clearly established federal law, and was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   28 U.S.C. § 2254(d).

With regard to Petitioner's claim that the State used false testimony, the state post conviction court expressly found the claim procedurally barred because Petitioner failed to raise the issue at trial and then on direct appeal.  Exh. 15 at 14-15.  The appellate court affirmed without opinion.

Here, the State court expressly rejected Petitioner claim that the State had used false testimony on the basis that Petitioner had failed to comply with the State's procedural requirements to raise his claim at trial and on direct appeal.  Unless a petitioner can show "cause" for the default and "prejudice" attributable thereto, or a fundamental miscarriage of justice, the state court's "adequate and independent finding of procedural default will bar federal habeas review of a federal claim."  Harris v. Reed, 489 U.S. 255, 262 (1989).  Petitioner neither demonstrates cause for, nor prejudice therefrom, to excuse his procedural default. Further, based upon the record, Petitioner is not entitled to the fundamental miscarriage of justice exception to excuse his default. Doorball v. Sec'y, Fla. Dep't of Corr., 572 F.3d 1222, 1227 (11th Cir. 2009). Thus, the Court finds Ground Eleven is procedurally defaulted.

**Ground Seven**

Petitioner claims that the appellate court committed "constitutional error" when it affirmed the post conviction court's order rejecting Petitioner's claim that counsel was ineffective for failing to object to the trial court's "refusal" to clarify a jury request on the presumption regarding recent possession of stolen property. Petition at 23-24.

Petitioner raised this claim in his Rule 3.850 motion as ground H. Exh. 16, Vol. I at 19, 47-51. Petitioner was afforded an evidentiary hearing on this claim. Exh. 14 at 5. The post conviction court rejected this claim as follows:

25.  In ground H, the Defendant argues that trial counsel was ineffective for failing to object to the trial court's refusal to clarify a jury question "on [the] recent possession of stolen goods presumption instruction" and for failing to object to the inclusion of that instruction.  The trial court gave the following jury instruction at issue:

Proof of unexplained possession by an accused, the property recently stolen by means of a burglary may justify a conviction of burglary with intent to steal that property if the circumstances of the burglary and the possession of the stolen property when considered in light of all evidence in the case, convince you beyond a reasonable doubt that the Defendant committed the burglary.

(November 8, 2001 Tr. at 97).  During deliberations, the jury asked for the definition of unexplained possession by an accused, the trial court reread the above instruction, and the trial court did not clarify the instruction. (November 8, 2001 Tr. at 129-132).  At the evidentiary hearing, the Defendant testified that, after trial, he learned that the instruction "can only be given when [a] defendant fails to explain when first asked by

police." (July 19, 2007 Tr. at 38-39).   The Defendant
stated that Mr. Lombardo was aware that the police never
questioned the Defendant regarding possession of recently
stolen property, thus, Mr. Lombardo should have objected
to the instruction. (July 19, 2007 Tr. at 39-41).   The
Defendant testified that he and Mr. Lombardo never
discussed jury instructions before trial. (July 19, 2007
Tr. at 40).   According to the Defendant, Mr. Lombardo
should have objected when the trial court did not clarify
the instruction. (July 19, 2007 Tr. at 40).   The
Defendant admitted that, on direct appeal, he argued that
the trial court erred by giving the instruction. (July
19, 2007 Tr. at 84-85).   Additionally, Mr. Lombardo
stated that he objected to the instruction and to the
trial court's refusal to clarify the instruction. (July
19, 2007 Tr. at 128-130).

26.   The Court finds that the Defendant failed to meet
his burden of proving that Mr. Lombardo was ineffective
for failing to object to the trial court's refusal to
clarify the jury's question regarding the definition of
unexplained possession by an accused and for failing to
object to the inclusion of the instruction at issue.   The
Court finds that the Defendant failed to overcome the
strong presumption that Mr. Lombardo's performance was
not deficient.   Mr. Lombardo testified that he objected
to both matters.   The Court, having reviewed the trial
transcript, also finds that the instruction was proper,
thus, there was no need for Mr. Lombardo to object.
Walker v. State, 896 So. 2d 712 (Fla. 2005)(permissible
inference of guilt from defendant's unexplained
possession of property recently stolen arises from
defendant's possession of goods, not defendant's failure
to explain such possession).   Similarly, the Court finds
that the trial court's refusal to clarify the jury's
question was proper, thus, no objection was warranted.
Whitfield v. State, 706 So. 2d 1 (Fla. 1997)(trial judge
did not abuse discretion by declining to give affirmative
response to jury's question and choosing instead to
reread standard instruction to jury).   Further, the Court
finds that the Defendant is precluded from arguing that
Mr. Lombardo was ineffective for failing to object the
instruction because the Defendant conceded that, on
direct appeal, the Defendant argued that the trial court
erred in giving the instruction.   See May v. State, 769
So. 2d 974 (Fla. 2000)(even if couched in ineffective
assistance language, claims that were raised on direct
appeal are procedurally barred on 3.850 motion).

> Moreover, the Court, having reviewed the trial transcript, finds that the Defendant failed to prove prejudice. <u>Dunsford v. State</u>, 399 So. 2d 91 (Fla. 1st DCA 1981)(in view of nature of evidence against defendant, jury could not have been mislead by unexplained possession charge).   For these reasons, ground H is denied.

Exh. 15 at 17-18.  The appellate court *per curiam* affirmed.  <u>Hunt v. State</u>, 9 So. 3d 625 (Fla. 2d DCA 2009); Exh. 19.

The record reveals that, during the charge conference, trial counsel <u>did</u> object to the trial court giving Florida's standard principal instruction.  Exh. 16, Supp. I at 268.  Additionally, Petitioner raised a claim of trial court error concerning the subject instruction on direct appeal.  Exh. 2 at 18.  The appellate court *per curiam* affirmed Petitioner's conviction and sentence.  Exh. 5.  Consequently, the Florida appellate court opined that the subject instruction was proper under Florida law.  Because the Florida appellate court already determined that the instruction was not improper, counsel's failure to seek further clarification upon questioning of the instruction from the jury during deliberations cannot be deemed deficient.  <u>Callahan v. Cambell</u>, 427 F.3d 897, 932 (11th Cir. 2005)(recognizing that where state appellate court has already made ruling by addressing the underlying issue as to what would have happened had counsel objected, counsel cannot be ineffective for failing to make objection).  Indeed, trial counsel had already preserved the propriety of the instruction by objecting to it during the charge conference.  In order to demonstrate that

counsel was deficient, Petitioner would need to show that the "challenged instruction, viewed in the context of both the entire charge and the trial record, so infected the entire trial that the resulting conviction violated due process." Jamerson v. Sec'y, Fla. Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005)(internal citations and quotations omitted). Petitioner has not carried this burden.

Based upon a thorough review of the record, the Court finds that the State court's adjudication of Ground Seven was not contrary to or an unreasonable application of clearly established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Thus, the Court finds that Petitioner is not entitled to relief on Ground Seven.

**Ground Eight**

Petitioner assigns "constitutional error" to the appellate court for affirming and failing to address on the merits the post conviction court's rejection that trial counsel was ineffective for advising Petitioner against testifying, and/or coercing Petitioner not to testify. Petition at 25. In support, Petitioner avers that counsel failed to "properly explain the Williams rule"[7] to him

---

[7]Under Florida law, similar fact evidence of other crimes, referred to as Williams Rule evidence, "is admissible when relevant to prove a material fact in issue" such as motive, intent, preparation or plan. Fla. Stat. § 90.404(2)(a). If the State
(continued...)

prior to trial; made the "intimidating statement" that "the trial

is not winnable and Petitioner will receive 90 years in prison if

he testified and that Petitioner is a crack-head;" and, threatened

to withdraw as counsel if Petitioner testified.   Id. at 25-26.

Petitioner raised this claim in his Rule 3.850 motion as ground I,

Exh. 16, Vol. I at 19, 51-57, and afforded an evidentiary hearing

to develop the factual underpinnings of this claim.   Exh. 14 at 5.

The post conviction court, in denying this claim, held in pertinent

part:

> 27.   In ground I, the Defendant argues that trial counsel
> was ineffective for advising him not to testify, for
> failing to "fully explain the question by the State which
> would not be permissible," and/or for coercing him not to
> testify.   At trial, the Defendant confirmed that he did
> not wish to testify and that he understood his rights in
> that regard. (November 8, 2001 Tr. at 33-36).   At the
> evidentiary hearing, the Defendant stated that he did not
> testify because Mr. Lombardo told him that, if he
> testified, the State would elicit facts of his prior
> convictions. (July 19, 2007 Tr. at 43-45).   The Defendant
> did not recall whether Mr. Lombardo told the Defendant
> that the question that the Defendant could be asked was
> whether or not the Defendant was a convicted felon.
> (July 19, 2007 Tr. at 45).   According to the Defendant,
> had he testified, he would have refuted the testimony by
> Andrew Cole and Detective Ramsey, discussed previously,
> he would have testified that he was not involved in the
> Co-Defendant's actions, and he would have testified that
> he was never questioned by police regarding possession of
> stolen items. (July 19, 2007 Tr. at 51-53, 58).   However,
> Mr. Lombardo indicated that he informed the Defendant
> that the State could not elicit specific facts of any

---

[7](...continued)
intends to rely on Williams Rule evidence, it must give written
notice to the defendant's counsel "no fewer than 10 days before
trial," unless the evidence is to be "used for impeachment or on
rebuttal."   Id. § 404(2)(c)(1).

prior felonies, unless the Defendant was untruthful regarding the number of felonies committed by the Defendant. (July 19, 2007 Tr. at 142-143).

28.   The Court finds that the Defendant failed to meet his burden of proving that Mr. Lombardo was ineffective regarding the Defendant taking the stand.   The Court finds that the Defendant failed to overcome the strong presumption that Mr. Lombardo's performance was not deficient.   The Defendant, stated on the record, after the trial court instructed him on his rights, that it was his decision not to testify.   Also, Mr. Lombardo indicated that he explained to the Defendant that the State could not elicit specific facts of any prior felonies, unless the Defendant was untruthful about the number of felonies committed by the Defendant.   In addition, the Court, having reviewed the trial transcript, finds that the Defendant failed to demonstrate prejudice resulting from the absence of his testimony at trial.   For these reasons, ground I is denied.

Exh. 15 at 18-19.   The appellate court *per curiam* affirmed the post conviction court's denial of this claim.   Hunt v. State, 9 So. 3d 625 (Fla. 2d DCA 2009); Exh. 19.

The United States Supreme Court has recognized that a defendant in a criminal trial has the ultimate authority to make certain fundamental  decisions in his case: (1) whether to plead guilty; (2) waive a jury; (3) testify in his own behalf; and (4) take an appeal.   United States v. Burke, 257 F.3d 1321, 1323 (11th Cir. 2001)(citing Jones v. Barnes, 463 U.S. 745 (1983)), cert. denied, 123 S. Ct. 940 (2002).   Counsel cannot waive fundamental rights on behalf of a client, including the client's right to testify.   United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992).   It is counsel's primary responsibility to advise the

defendant of his right to testify and the strategic implications of taking the stand.  Id. at 1533.  Ultimately, the defendant himself makes the final choice as to whether to testify or not.  Id.

Here, the trial record clearly reflects that the trial court advised Petitioner of his right to testify and he expressly declined to testify.

> THE COURT:  Okay. I also, having been informed by Counsel that you're not going to take the stand, I just want to go over what your rights are.  That is part of the choosing not to take the stand, of course, is your right. Have you had an opportunity to discuss this with Mr. Lombardo?
>
> THE DEFENDANT:  An opportunity to discuss - -
>
> THE COURT:  Whether or not you want to testify on your own behalf or not take the stand?
>
> THE DEFENDANT:  Yeah.

Exh. 16, Vol. X at 1789.  The trial court then read the jury instructions that would be read if Hunt did not take the stand, and the jury instructions that would be read if Hunt did testify.  Id. at 1790-92.  Thereafter, the trial court again inquired of Hunt whether he understood his right to testify.

> . . . So, that, in essence, are the instructions that I would give.  And Mr. Lombardo, as I said a few minutes ago, told me that you were not desirous of taking the stand in your own case.  I just want to make sure that that is the case and you understand what your rights are in that regard?
>
> THE DEFENDANT:  Yes, I do.
>
> THE COURT:  Okay. It is your right not to testify. Is that what you're choosing to do at this time?

THE DEFENDANT:  Yes, Your Honor.

Id. at 1792.

Here, the record reflects that Hunt did not express any confusion or voice any concerns that he was being coerced or intimidated by trial counsel into making the decision not to testify.  At the evidentiary hearing, Petitioner explained only that trial counsel told him the State could "elicit facts on my priors and stuff like that if I testified and things of that nature." E.H. at 1179.  He complained that counsel did not advise him of the Williams Rule, and explained that he learned about the Rule and what the prosecution could only ask him about after the trial concluded in prison after doing research.  Id. at 1180. Petitioner admitted it was his "belief" that the prosecution could go into the facts surrounding Hunt's priors, which made him afraid to testify.  Id. at 1180-82.

In contrast, trial counsel pointed out that the State did not file a Williams Rule notice so he had no reason to explain the Williams Rule to Petitioner.  Id. at 1277.  Although, counsel did not have any notes about Hunt testifying, he believed that he would have told him the State could not bring out any facts about his priors unless he was untruthful.  Id. at 1278.

Based upon the parties' respective testimony during the evidentiary hearing, and Petitioner's unequivocal rejection of his right to testify on the record at trial, the post conviction court

concluded that counsel did not interfere with Hunt's right to testify.  The record amply supports this finding.  The Court finds that the State courts' factual determinations were not unreasonable determinations based on the evidence presented.  Additionally, the State courts' decisions were not contrary to or an unreasonable application of clearly established federal law.  As noted above, counsel's actions are presumed reasonable.  Consequently, the Court will deny Ground Eight as without merit.

**Ground Nine**

Petitioner contends that the appellate court "committed constitutional error"  for *per curiam* affirming and failing to address on the merits the post conviction court's rejection that trial counsel was ineffective for changing his defense theory during the trial.  Petition at 28.  In particular, Petitioner alleges that when he asked counsel what his defense theory was before trial, counsel told him he had "no theory."  Id.  During the trial, counsel then switched "from no theory to admission [of] guilt."  Id. at 28-29.  Petitioner claims he "did not agree or approve" of the change in defense theories.  Id. at 29.

Hunt raised this claim in his Rule 3.850 motion as ground J. Exh. 16, Vol. I at 19, 57-68.  Petitioner was afforded an evidentiary hearing on this claim. Exh. 14 at 5.  The court denied Hunt relief of this ground, and the appellate court *per curiam*

affirmed.  <u>Hunt v. State</u>, 9 So. 3d 625 (Fla. 2d DCA 2009); Exh. 19.

In denying relief, the post conviction court held:

> 29. In ground J, the Defendant argues that trial counsel was ineffective for presenting an invalid and/or improper defense theory.   At the evidentiary hearing, the Defendant testified that he did not discuss a theory of defense with Mr. Lombardo and that Mr. Lombardo said he did not have a theory of defense. (July 19, 2007 Tr. at 54-55).   The Defendant stated that, as the trial proceeded, he learned that the theory of defense was that there was insufficient evidence to convict, and he did not agree to that theory. (July 19, 2007 Tr. at 55-56). The Defendant reiterated the claim in ground D, that Mr. Lombardo admitted that the Defendant was trespassing without the Defendant's consent, and the claim in ground I, that, had the Defendant taken the stand, the Defendant would have maintained the Defendant's innocence. (July 19, 2007 Tr. at 55, 58).  According to the Defendant, the theory of defense presented by Mr. Lombardo was invalid and/or improper because Mr. Lombardo "Just wouldn't do anything [the Defendant] asked him to do." (July 19, 2007 Tr. at 58-59).

> 30.  At the evidentiary hearing, the following exchange occurred during Mr. Lombardo's testimony regarding the theory of defense:

>> [Mr. Lombardo]: I think my plan was, as I set out in the opening and closing statements, that Mr. Hunt, based on the evidence that - - as I evaluated it, his best shot was to admit that he was there, [sic] had no knowledge of what [the Co-Defendant] was doing, he was merely a - - basically an innocent bystander and happened to be driving him around at his request - - [the Co-Defendant's] request around.  And that his best shot was to admit that he was there and that he was trespassing. And that was my - - the thrust of my defense and I thought that was the best way to go.

>> Q: And what evidence to you have to support that defense?

>> [Mr. Lombardo]: Well, I think the evidence against Mr. Hunt was fairly strong, so I had

> to go with what I thought was the best way to
> proceed.  I didn't think we could go to the
> defense of he wasn't there.  He even admitted
> he was there at those three different
> locations.  In his own statement, he admitted
> he was there.  So we had tried to suppress the
> statement.  It was not - - that was denied by
> Judge Pellecchia.  So his own statement was
> going to put him there, so we had to explain
> why he was there.  Hence, the explanation of
> I'm an innocent bystander, I didn't know what
> [the Co-Defendant] was doing, I didn't
> participate, I didn't go into the houses, my
> fingerprints aren't there, et cetera.

(July 19, 2007 Tr. at 130-13 1).  Mr. Lombardo indicated
that he and the Defendant "discussed that this would be
the best strategy." (July 19, 2007 Tr. at 137-138).

31.  The Court finds that the Defendant failed to meet
his burden of proving that Mr. Lombardo was ineffective
for presenting an invalid and/or improper defense theory.
The Court finds that the Defendant failed to overcome the
strong presumption that Mr. Lombardo's performance was
not deficient.   Mr. Lombardo's testimony demonstrates
that, based on the evidence, which included admissions by
the Defendant, the theory of defense presented by Mr.
Lombardo was a reasonable and proper trial strategy.  An
attorney is not ineffective for strategic decisions that,
in hindsight, did not work to the defendant's advantage.
State v. Richardson, 963 So. 2d 267 (Fla. 2d DCA 2007).
The Court, having reviewed the trial transcript, finds
that the Defendant also failed to prove prejudice.  For
these reasons, ground J is denied.

Exh. 15 at 19-21.

Petitioner's claim that counsel changed the defense theory to
an "admission of guilt" is rebutted by the record.  Trial counsel
never conceded Petitioner's guilt to the offenses charged.
Instead, Petitioner advanced a reasonable defense theory that
explained Petitioner's presence at the crime scenes.  As noted
*supra* in Ground Three, counsel's tactical decision to admit to a

lesser offense does not amount to a guilty plea.  See McNeal v. Wainwright, 722 F.2d at 677.

Here, the state court throughly reviewed and addressed this ground after affording Hunt an opportunity to develop his claim at an evidentiary hearing.  The appellate court reviewed the claim and concluded that Hunt was not entitled to relief.  Petitioner has not overcome the "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254 (d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).  Consequently, because the state court's resolution of this claim was not contrary to or an unreasonable application of clearly established law, the Court denies Ground Nine as without merit.

**Ground Ten**

Petitioner assigns "constitutional error" to the appellate court for silently affirming the post conviction court's rejection of Petitioner's claim that counsel's cumulative errors constituted ineffective assistance.  Petition at 30-31.  Petitioner raised this claim as ground K in his Rule 3.850 motion.  Exh. 16, Vol. I at 19, 63.  The post conviction court denied Petitioner relief.  Exh. 15 at 21.  The appellate court per curiam affirmed.  Hunt v. State, 9 So. 3d 625 (Fla. 2d DCA 2009); Exh. 19.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the

constitutional right to a fair trial, which calls for reversal." Morris v. Sec'y, Fla. Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2010)(quoting United States v. Baker, 432 F.3d 1189, 1223 (11th Cir.2005) (internal quotation marks omitted). Thus, in order to raise a claim of cumulative error, a petitioner must make a showing that his state court trial was fundamentally unfair. Pope v. Sec'y, Fla. Dep't of Corr., 680 F.3d 1271, 1297 (11th Cir. 2012). However, the Eleventh Circuit has not determined whether under current United States Supreme Court precedent a cumulative error claim is cognizable in a habeas action. Morris, 677 F.3d 1132, fn.3.

Nonetheless, because none of Hunt's individual grounds of error or prejudice have merit, Hunt's claim of cumulative error is without merit. Further, Hunt does not show that his state court trial was fundamentally unfair. Indeed, the record shows that the State produced strong evidence of Hunt's guilt, including Hunt's own confession. Thus, the State post conviction court's decision was not contrary to clearly established federal law and was not an unreasonable application of clearly established federal law. Further, upon a thorough review of the record, the State post conviction court's findings were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Consequently, the Court denies Ground Ten as without merit.

**Ground Twelve**

Petitioner submits that certain conditions of his probation should not have been imposed.   Petition at 37.   In support, Petitioner argues that the trial erred in imposing drug testing as a condition of Petitioner's probation in violation of his due process rights.   Petition at 37.   More specifically, Petitioner argues that imposing drug testing as part of his probation is improper because he was not charged with a drug offense and "by imposing drug testing" he is labeled "as a drug user."   Id.

Petitioner raised a claim objecting to various conditions of his probation as ground M in his Rule 3.850 motion.   Exh. 16, Vol. I at 19, 73-74.   In particular, Petitioner objected to the following conditions of probation: 7, 10, 11 and 13.   Id. Petitioner, however, objected to these various conditions of probation on the basis that these conditions were imposed "out of the presence of Hunt and/or his attorney."   Id.   Further, only condition 7 and 13 relate to the use of drugs and/or intoxicants. Exh. 15 at 22, 24.[8]   The post conviction court granted Petitioner

---

[8]In its October 31, 2007 Order, concerning the relevant conditions 7 and 13, the post conviction court held:

> Condition 7 states, "You will not use intoxicants to excess or possess any drugs or narcotics unless prescribed by a physician. Nor will you visit places where intoxicants, drugs or other dangerous substances are unlawfully sold, dispensed, or used." (Probation order at 1). Condition 7, which is a statutory condition that need not be pronounced, is not unconstitutional,
>
> (continued...)

relief on all grounds, except as to condition 7 and the testing requirement in condition 13.  Id. at 21-24.

At the outset, the Court finds that this ground does not raise an issue for which habeas relief lies.  Whether the trial court erred in imposing drug testing as a condition of Hunt's probation as governed by State statute, see Fla. Stat. § 948.03, is an issue of State law.  Branan v. Booth, 861 F.2d at 1508.  Consequently, the Court dismisses Ground Twelve.

Alternatively, Petitioner did not challenge the condition of drug testing in his Rule 3.850 motion on the same basis that he

---

[8](...continued)
as alleged by the Defendant. See §948.03(l)(m), Fla. Stat. (2000); Fla. R. Crim. P. 3.986(e); Ringling v. State, 678 So. 2d 1339 (Fla. 2d DCA 1996).  Therefore, the Court will not strike condition 7.

. . .

Condition 13 states as follows:

You will submit to urinalysis, breathalyzer or blood tests at any time requested by your officer, or the professional staff of any treatment center where you are receiving treatment, to determine possible use of alcohol, drugs, or controlled substances.  You shall be required to pay for the tests unless payment is waived by your officer.(Probation order at 2).  While the portion of condition 13 that provides for random drug testing is a valid general condition of probation that need not be pronounced and is not improper because the Defendant is insolvent, the portion of condition 13 that requires the Defendant to pay for the testing was not pronounced and will be stricken. See § 948.03(1)(k), Fla. Stat. (2000); Ringling, 678 So. 2d at 1341.

Exh. 15 at 22, 24.

challenges the condition herein in his Petition.  Indeed, Hunt first raised the claim advanced herein as "Issue Thirteen" in his appeal of the post conviction court's denial of his Rule 3.850 motion.  Exh. 17 at 31.  The State, in response, did not address the merits of the claim but instead argues that the newly raised claim was procedurally barred.  Exh. 17 at 46.  More specifically, the State maintained that whether probation was properly imposed in violation of Hunt's due process rights is an issue that could and should have been raised on direct appeal.  Id.  The appellate court *per curiam* affirmed.  Hunt v. State, 9 So. 3d 625 (Fla. 2d DCA 2009); Exh. 19.  Consequently, in the alternative, the Court finds that Ground Twelve is unexhausted and procedurally barred.

THEREFORE, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED for the reasons set forth above.**

2.   The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and close this file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a

district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida, on this   22nd   day of August, 2012.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record

-55-